UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| COKER & ASSOCIATES OF SC, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SUMMIT FREIGHT INTERNATIONAL, INC.; AMERICAN CARRIER TRANSPORT, LLC d/b/a WCE TRANS; ARL LOGISTICS, LLC; and WARNESS JENKINS, <br><br> Defendants. | Action No.: 4:25-CV-00324-RSB-CLR |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND**

Defendants American Carrier Transport, LLC d/b/a WCE Trans and ARL Logistics, LLC ("Defendants") respectfully submit this response in opposition to Plaintiff Coker & Associates of SC, LLC's Motion to Remand for lack of Subject-Matter Jurisdiction, Doc. 8 ("Remand Motion"). Plaintiff Coker & Associates of SC, LLC ("Plaintiff") contends in its Remand Motion that this Court lacks subject matter jurisdiction for three principal reasons. First, Plaintiff argues that the Carmack Amendment to the Interstate Transportation Act, 49 U.S.C. § 14706 *et seq.*, does not completely preempt state law. Second, Plaintiff maintains that this Court cannot

HB: 4912-4735-4247.2

consider extrinsic evidence outside of a plaintiff's complaint at the time of removal. Lastly, Plaintiff asserts that the shipment at issue was purely intrastate, rendering the Carmack Amendment inapplicable. For the following reasons, Plaintiff's contentions are incorrect and this action is properly before this Court.

## I.    BACKGROUND

### A. Procedural History

On November 14, 2025, Plaintiff commenced a lawsuit in the Superior Court of Chatham County, Georgia, captioned *Coker & Associates of SC, LLC v. Summit Freight International, Inc.; American Carrier Transport, LLC d/b/a WCE Trans; ARL Logistics, LLC; and Warness Jenkins*, Case No. STCV25-03589. On December 1, 2025, Plaintiff served Defendant ARL Logistics, LLC with its Complaint ("Complaint"). *See* Doc. 1-1, Ex. A. On December 30, 2025, Defendants timely removed the above-captioned action. Doc. 1. On January 6, 2026, Defendants filed a Rule 12(b)(6) Motion to Dismiss. Doc. 5. On January 12, 2026, Plaintiff filed its Remand Motion. Doc. 8.

### B. Relevant Factual Background

On August 22, 2024, Plaintiff received a pickup order from ASF Logistics showing that "USED TEXTILE MACHINERY" (hereinafter, "Cargo") was to be loaded at the Port of Savannah and then discharged at Mundra, India. Exhibit A-1, Remand Motion ("ASF Cargo Pickup Order"); *contra* Decl. Jackson "Chip" Coker ("Coker Decl."); Exhibit A-2, Remand Motion ("Guatemalan Booking

Confirmation").[1] That same day, Defendant Summit Freight International, Inc. ("Summit") "agreed to arrange over-the-road transportation" of the Cargo. Compl. ¶ 10; Remand Motion 2; Doc. 1-3, Exhibit B-2 ("Summit Pickup and Delivery Order"). Summit then engaged Defendants to tender the load for carriage. Compl. ¶ 11; Remand Motion 2.

On August 23, 2024, Plaintiff received a Straight Bill of Lading showing that the consignee and destination were "Savannah Port." Compl. ¶ 20; Remand Motion 2; Exhibit B, Remand Motion. On September 3, 2024, Defendant Warness Jenkins allegedly lost control of the tractor-trailer transporting the Cargo and the Cargo "sustained catastrophic damage" and "was determined to be a total loss." Compl. ¶¶ 26–30; Remand Motion 2–3. Coker notified Defendants of the loss and submitted a cargo claim to Defendants' insurer. Compl. ¶¶ 32–35; Remand Motion 3.

---

[1] Plaintiff contends that Exhibit A reflects that the booking for the Cargo "was taken on July 22, 2024," but the Guatemalan Booking Confirmation is for a different booking than the one at issue. Coker Decl. The ASF Cargo Pickup Order is a Pickup Order dated on *August 22*, 2024, for the Cargo as its Port of Loading is Savannah and Port of Discharge is Mundra, Jhattipur, India. The Guatemalan Booking Confirmation is a booking confirmation dated July 22, 2024, for a shipment whose Port of Loading was Charleston, SC and its Port of Discharge was Puerto Barrios, Guatemala. The ASF Cargo Pickup Order and the Guatemalan Booking Confirmation are unrelated documents as the vessel names, voyage numbers, Port Cut Off Dates, ETAs, and gross weight do not correspond. *See* Exhibit A, Remand Motion. Even though both documents are for a "textile machinery," the ASF Cargo Pickup Order is for a "USED TEXTILE MACHINERY" with 32 pieces and the Guatemalan Booking Confirmation is for a "TEXTILE MACHINERY" with 9 pieces.

## II.    STANDARD OF REVIEW

A removal to federal court that is dependent on "a federal question 'is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Davis v. Chatham Area Transit Authority*, Case 4:24-cv-00146-RSB-CLR, Doc. 10 at 4 (S.D. Ga. Mar. 3, 2025) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal citation omitted)). An exception to the well-pleaded complaint rule is the complete-preemption doctrine, where "a complaint that (on its face) raises only state-law claims can still be removed 'when a federal statute wholly displaces the state-law cause[s] of action through complete pre-emption.'" *Poet Theatricals Marine, LLC v. Celebrity Cruises, Inc.*, No. 21-10410, 2023 WL 3454614, at *3 (11th Cir. May 15, 2023); *see also Schleider v. GVDB Operations, LLC*, 121 F.4th 149, 156 (11th Cir. 2024). This means that even if a complaint does not present a federal question, a court may still uphold a removal if it concludes that the plaintiff has artfully pled to conceal federal jurisdiction. *DeRoy v. Carnival Corporation*, 963 F.3d 1302, 1310 n.11 (11th Cir. 2020) (explaining the artful-pleading doctrine after declining to employ it due to establishing federal jurisdiction by other means); *see also Caterpillar*, 482 U.S. at 397 n.11 (acknowledging that most courts apply the artful pleading doctrine in line with the complete preemption doctrine).

4

In determining whether a state-law cause of action is completely preempted, courts look to whether federal statutes provide the "exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1291 (11th Cir. 2004) (citation modified); *see also Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).[2] The Eleventh Circuit further interprets complete preemption to mean that courts may "look beyond the complaint to determine if the suit is, in reality, purely a creature of federal law, such that the plaintiff's claim creates the federal question jurisdiction requisite to removal to federal court." *Schleider*, 121 F.4th at 160 (citation modified). Thus, if a plaintiff "could have brought his claim under the relevant federal statute" and there is "no other independent legal duty that is implicated by a defendant's actions," then the plaintiff's "cause of action is completely pre-empted by that federal statute." *Id*. (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)).

## III.   ARGUMENT

### A. Carmack Amendment Completely Preempts State-Law Claims

The Carmack Amendment was enacted to "achieve uniformity in rules governing interstate shipments, including the rules governing injury or loss to

---

[2] In its *Beneficial* decision, the Supreme Court clarified that the complete preemption analysis begins with Congressional intent regarding exclusive causes of action, not removal. *Beneficial*, 539 U.S. at 9 n.5.

property shipped." *UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1285 (11th Cir. 2014). It provides shippers with a single cause of action against carriers for loss sustained in connection with the transit of property. 49 U.S.C. § 14706(a)(1). Further, it preempts all state-law claims on "the subject of the liability of the carrier." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913) (stating that the Carmack Amendment "embraces the subject of the liability of the carrier" so completely that it "supersede[s] all state regulation with reference to it").

Under the Carmack Amendment, a shipper may recover for the actual losses resulting from the loss of or damage to property caused by a carrier involved in an international shipment. 49 U.S.C. § 14706(a)(1); 49 U.S.C. § 13501(1)(E). Within a few years of the Carmack Amendment's passage, the United States Supreme Court addressed the amendment's dual goals of uniformity and preemptive scope. In the seminal case of *Adams Express*, the Supreme Court defined Carmack Amendment preemption in the broadest terms:

> Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it . . . But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist.

226 U.S. at 505–06.

Each succeeding Supreme Court decision interpreting the scope of the Carmack Amendment has repeated the principles enunciated in *Adams Express*—

6

comprehensiveness of application and uniformity of treatment regardless of state laws. *See, e.g. New York, N. H. & H. R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953) ("With the enactment in 1906 of the Carmack Amendment, Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss."); *Atchison, T. & S. F. R. Co. v. Harold*, 241 U.S. 371, 378 (1916) ("[I]t is not disputable that what is known as the Carmack Amendment . . . was an assertion of the power of Congress over the subject of interstate shipments, the duty to issue bills of lading and the responsibilities thereunder, which in the nature of things excluded state action."); *Charleston & W. Carolina Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 604 (1915) (even state-law claims that supplement the Carmack Amendment are preempted.)

The Eleventh Circuit consistently holds that the Carmack Amendment's broad scope preempts all state-law claims, whether they contradict or supplement remedies under the Carmack Amendment.[3] *Skanes v. FedEx*, 734 F. App'x 671, 673 (11th Cir.

---

[3] Other Circuit Courts have also come to similar conclusions. *See, e.g. White v. Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008) ("The Carmack Amendment … provides the *exclusive cause of action* for interstate shipping contract claims, and it *completely preempts* state law claims alleging delay, loss, failure to deliver and damage to property.") (emphasis added); *Rini v. United Van Lines*, 104 F.3d 502, 506 (1st Cir. 1997) ("[A]ll state laws that impose liability on carriers based on the loss or damage of shipped goods are preempted."); *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 379 (2d Cir. 1994) (Carmack Amendment preempts federal common law claims); *Certain Underwriters at Interest at Lloyd's of London v. UPS of Am., Inc.*, 762 F.3d 332 (3d Cir. 2014) (holding that "the Carmack Amendment preempts all state law claims for compensation for the loss of or damage to goods

2018) ("The pre-emptive effect of the Carmack Amendment is broad and embraces all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation."); *UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d at 1285; *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1246 (11th Cir. 2002) ("[T]he Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods."). Decisions from the Southern District of Georgia likewise acknowledge the preemptive force of the Carmack Amendment. *Hubbard v. All States Relocation Servs., Inc.*, 114 F. Supp. 2d 1374, 1378 (S.D. Ga. 2000) ("[T]herefore, the Carmack Amendment "preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate

---

shipped by a ground carrier in interstate commerce"); *Rush Indus. v. MWP Contractors, LLC*, 539 F. App'x 91, 95 (4th Cir. 2013) (Carmack Amendment "preempts all state or common law claims available to a shipper against a carrier for loss or damage associated with interstate shipment"); *Heniff Transp. Sys., L.L.C. v. Trimac Transp. Servs.*, 847 F.3d 187, 190 (5th Cir. 2017) (Carmack is "the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier"); *W. D. Lawson & Co. v. Penn Cent. Co.*, 456 F.2d 419, 421 (6th Cir. 1972) ("As to the . . . issue . . . [of] whether or not the Carmack Amendment preempted common law suits . . . we hold that it did."); *Hughes v. United Van Lines, Inc.*, 829 F. 2d 1407, 1415 (7th Cir. 1987) (holding that "the remedy provision of the Carmack Amendment preempts all state and common law remedies inconsistent with the Interstate Commerce Act"); *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir. 1985) ("All actions against a common carrier, whether designated as tort or contract actions, are governed by the federal statute [the Carmack Amendment]"); *Underwriters at Lloyds of London v. North American Van Lines*, 890 F.2d 1112, 1121 (10th Cir. 1989) ("[W]e now hold that the Carmack Amendment preempts state common law remedies . . . for negligent loss or damage to goods shipped under a lawful bill of lading.").

shipments."); *Apperson v. Belton Ind.*, No. CIV.A. 495-186, 1996 WL 906349, at *4 (S.D. Ga. Dec. 12, 1996), *aff'd sub nom. Apperson v. Belton Indus., Inc.*, 148 F.3d 1071 (11th Cir. 1998).

Despite the Carmack Amendment's preemption of state law claims, Plaintiff claims that the Eleventh Circuit has not addressed removal jurisdiction or the complete preemption doctrine in the context of the Carmack Amendment. Remand Motion 8. Plaintiff improperly asserts that the Carmack Amendment does not completely preempt state law claims in support of removal for federal question jurisdiction. *Id*. Plaintiff points to two cases to support its argument: *Lamm v. Bekins Van Lines Co.*, 139 F. Supp.2d 1300, 1302 (M.D. Ala. 2001), and *Circle Redmont, Inc. v. Mercer Transp. Co., Inc.*, 78 F. Supp. 2d 1316 (M.D. Fla. 1999). Both *Lamm* and *Circle* were published prior to the Supreme Court's decision in *Beneficial*, and their analyses of complete preemption were incorrectly focused on whether there was Congressional intent for the Carmack Amendment to be able to remove cases versus the Congressional intent for the Carmack Amendment to be the exclusive cause of action for such claims. *Lamm*, 139 F. Supp. 2d at 1310 ("Congress did not intend to establish complete preemption of state-law claims by the Carmack Amendment"); *Circle*, 78 F. Supp. 2d at 1319 ("[T]he Carmack Amendment's language and legislative history do not manifest an intent to transform state law claims into federal claims on removal.")

Plaintiff's reliance on these cases is flawed as the Court clarified the determinative analysis for the complete preemption doctrine in *Beneficial*. *Beneficial*, 539 U.S. at 9 n.5. *Beneficial* instructs courts to focus on whether "Congress intended the federal cause of action to be exclusive *rather than* on whether Congress intended that the cause of action be removable." (emphasis added). *Id*. Thus, the analyses of both *Lamm* and *Circle* are erroneous in light of the Supreme Court's decision in *Beneficial*.

Notably, all other cases cited by the Plaintiff to support their argument, except for one, predate the *Beneficial* decision. The one case dated after is *D'Angola v. GoBucks, Inc.*, No. 07-60864-CIV, 2007 WL 9709730, at *5 (S.D. Fla. Aug. 8, 2007). Significantly, *D'Angola* discussed *Beneficial* and concluded "that the complete preemption doctrine *does* apply to the Carmack Amendment, based on the Supreme Court's reasoning in *Beneficial* and the unusually powerful preemptive effect of the Carmack Amendment." *D'Angola*, 2007 WL 9709730, at *5 (emphasis added). Thus, *D'Angola* cuts against Plaintiff's position.

While the Eleventh Circuit has yet to examine the Carmack Amendment's complete preemption in light of *Beneficial*, other district courts in Georgia have come to similar conclusions as *D'Angola*. *E.g.*, *Andrews v. Atlas Van Lines, Inc.*, 504 F. Supp.2d 1329, 1332 (N.D. Ga. 2007) ("The court hereby finds that plaintiffs' claims are completely preempted by the Carmack Amendment and, therefore, that

10

they necessarily arise under federal law."); *Ozaroski v. D.O.L. Moving & Storage, Inc.,* No. 2:19-CV-201-RWS, 2020 WL 13568724, at *4 (N.D. Ga. Apr. 16, 2020) ("[T]he Court finds that the Carmack Amendment completely preempts Plaintiff's negligence claim and supplies federal subject matter jurisdiction.")

Other Circuit Courts also conclude that the Carmack Amendment completely preempts state-law claims. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) ("We are persuaded by the preceding decisions and analysis offered by the Supreme Court, and this Court, that Congress intended for the Carmack Amendment to provide *the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier.* Accordingly, we hold that the complete pre-emption doctrine applies.") (emphasis in original); *Hall v. N. Am. Van Lines, Inc*, 476 F.3d 683, 688–89 (9th Cir. 2007) ("[Plaintiff's claim] is completely preempted by the Carmack Amendment").

Lastly, other district courts in the Eleventh Circuit have also come to the same conclusion regarding the Carmack Amendment's complete preemption. *U.S. Aviation Underwriters, Inc. v. Yellow Freight System, Inc.*, 296 F. Supp.2d 1322, 1338 (S.D. Ala. 2003) ("The Court agrees with the Fifth Circuit that *Beneficial* removes all reasonable question as to whether complete preemption applies in a Carmack Amendment context."); *Morris v. Mayflower Transit, LLC*, 18 F. Supp. 3d 1342, 1345 (M.D. Ala. 2014) ("This Court agrees with the analyses of the Fifth and

Ninth Circuits and finds that Morris's claim is completely preempted by the Carmack Amendment."); *Grier v. Griffin Moving & Storage, Inc.*, 452 F. Supp. 3d 1325, 1331 (S.D. Fla. 2017) ("Plaintiffs' claims against Allied and Griffin . . . clearly arise from alleged loss and damage to interstate shipments and are, therefore, governed exclusively by the Carmack Amendment and are within the jurisdiction of this Court. Accordingly, this Court finds that this action was properly removed.")

In light of *Beneficial* and the more recent district court cases in the Eleventh Circuit, Plaintiff's assertion that the Carmack Amendment does not completely preempt its state law claims is without merit. The Carmack Amendment is the exclusive cause of action for Plaintiff's Cargo loss as it occurred during the intrastate leg of an international shipment. Thus, Plaintiff's state-law claims are completely preempted by the Carmack Amendment.

### B. Complete Preemption of Plaintiff's State Law Claims Makes Removal Proper Despite Plaintiff's Artful Pleading

The Eleventh Circuit recognizes complete preemption as an exception to the well-pleaded complaint rule. *Poet*, 2023 WL 3454614, at *3. Plaintiff argues that Defendants fail to establish federal question jurisdiction due to a "reliance on materials outside the Complaint." Remand Motion 9. Yet Plaintiff fails to address that the complete preemption doctrine allows the court to uphold removal even if a plaintiff has artfully pled its arguments or omitted facts to conceal federal jurisdiction. *DeRoy*, 963 F.3d at 1310 n.11.

12

The Court may look beyond Plaintiff's artful pleading and find that the Cargo was being internationally transported. *Schleider*, 121 F.4th at 160. Although Plaintiff's claims are all based on state law and the Complaint omits any mention of the Cargo's international final destination, Compl. ¶¶ 8–102; it is appropriate for this Court to consider Plaintiff's "supporting documentation," and Plaintiff's own exhibits attached to its Remand Motion. *See* Compl. ¶ 32; Exhibit B-1, Doc. 1-2 ("Pro Forma Invoice"); Summit Pickup and Delivery Order; ASF Cargo Pickup Order. Once it looks to these materials, the Court will undoubtedly conclude that the Cargo's final destination was India.[4] *See* Pro Forma Invoice, Summit Pickup and Delivery Order, ASF Cargo Pickup Order. Because the Cargo was "being transported by motor carrier between a place in the United States and a place in a foreign country," the Cargo was subject to the Carmack Amendment. 49 U.S.C. §§ 13501(E); 14706(a)(1). Because the Cargo was governed by the Carmack Amendment, and the Carmack Amendment completely preempts Plaintiff's state-law claims, federal question jurisdiction exists and removal is proper.

## C. The Carmack Amendment Applies to the Cargo

Plaintiff argues that the Cargo's final destination does not establish Carmack

---

[4] Notably, Plaintiff only objects to the Court's consideration of the Pro Forma Invoice and the Summit Pickup and Delivery Order. Remand Motion 9–11. Plaintiff does not challenge the veracity of these documents and even attaches its own exhibits that confirm that the Cargo's final destination is in India. ASF Pickup Order.

13

Amendment jurisdiction. Remand Motion 11. Plaintiff cites *Swift* and argues that the month-long interlude between its ocean shipping booking and trucking booking reflect separate transactions with different intents. *Id*. at 11–12; *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697 (11th Cir. 1986). But Plaintiff mischaracterizes the holding in *Swift* and the exhibits Plaintiff cites do not establish a month-long interlude between its booking.[5] Ultimately, *Swift* supports Defendants' position that the Cargo's international nature establishes the Carmack Amendment's applicability to the Cargo.

Plaintiff cites *Swift* but misunderstands the context of the opinion. Remand Motion 11. Plaintiff takes *Swift*'s language to mean that the intent of its individual bookings and "distinct transactions" (ocean and then trucking) determine the nature of the shipment, but *Swift* supports the exact opposite. *Id*. at 11–12. First, the facts in *Swift* are instructive. In that case, the plaintiff contracted to purchase a textile machine from a Swiss company. *Id*. at 698. The textile machine was ultimately damaged on an intrastate leg from Savannah, Georgia to LaGrange, Georgia, where

---

[5] As explained above, the Coker Declaration relies on the Guatemalan Booking Confirmation, which is unrelated to the shipment at issue. The Guatemalan Booking Confirmation is dated July 22, 2024, and pertains to a shipment from Charleston, SC to Puerto Barrios, Guatemala. In contrast, both the ASF Cargo Pickup Order and the Summit Pickup and Delivery Order are dated August 22, 2024, and relate to the Cargo shipped from Savannah, Georgia, to Mundra, India. Because the Guatemalan Booking Confirmation concerns a different shipment entirely, it does not support Plaintiff's argument that there were "unconnected transactions with different intermediaries and different timing." Remand Motion 12.

it was issued a separate bill of lading. *Id*. The court in *Swift* concluded that the Carmack Amendment explicitly applied to international shipments under its jurisdiction, even if the harm occurred during an intrastate leg because it was the *intent of the shipment rather than a singular bill of lading* that was the proper consideration for Carmack Amendment applicability. *Id*. at 700. ("Applying the 'intent' analysis, the fact that [defendant] issued a separate bill of lading for the final intrastate leg of the journey is not significant . . . [because] the shipment was a 'continuation of foreign commerce' [and] the Carmack Amendment applied to the shipment.")

The Court in *Swift* held that the intent analysis was for the shipment itself, not the intent of "contemporaneous shipping paperwork." *Id*.; Remand Motion 12. The "essential character of the commerce" is the intent of where the shipment is ultimately going. *Swift*, 799 F.2d at 699 (citation omitted). Temporary stoppages within the state are only a part of the "interstate" or "international" shipment and do not change a shipment's actual character. *Swift*, 799 F.2d at 699 (citing *State of Texas v. Anderson, Clayton &Co.*, 92 F.2d 104, 107 (5th Cir. 1937)).

Similar to *Swift*, the Cargo's separate bill of lading from Summit and the ASF Cargo Pickup Order do not destroy the original intent of the shipment to be finally discharged in India. *See* ASF Pickup Order, Summit Pickup and Delivery Order, Pro Forma Invoice. The plaintiff in *Swift* was also issued a separate bill of lading in its

intrastate movement from Savannah, Georgia, to LaGrange, Georgia, but *Swift* held that the separate bill of lading was "not significant" as it did not change the actual international nature of the shipment. *Id*. at 700. Likewise, in this case, the ultimate intent and final destination of the Cargo was India, not the Port of Savannah. Thus, the holding in *Swift* confirms and bolsters the Carmack Amendment's applicability to the Cargo, the federal question jurisdiction of this action, and the propriety of removal in this action.

IV.    **CONCLUSION**

Based on the foregoing, Plaintiff Coker & Associates of SC, LLC's Motion to Remand for Lack of Subject-Matter Jurisdiction should be denied in its entirety. The Carmack Amendment completely preempts Plaintiff's state-law claims, which establishes federal question jurisdiction over this action. Thus, this Court has subject-matter jurisdiction over this action, and removal was proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

16

Dated:  January 26, 2026

HUSCH BLACKWELL LLP

*/s/ Aaron C. Schepler*
Aaron C. Schepler (*Pro hac vice*)
2415 E. Camelback Road, Suite 500
Phoenix, Arizona 85016-4288
Tel. 480.824.7890
Fax 480.824.7905

Jonathan A. Porter
Georgia Bar No. 725457
1801 Pennsylvania Ave., NW
Suite 1000
Washington, DC 20006
Tel. 202.378.5356
Fax 202.378.2319

*Attorneys for American Carrier*
*Transport, LLC d/b/a WCE Trans* and
*ARL LOGISTICS, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January 2026, I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

Executed on January 26, 2026 at Phoenix, Arizona.

*/s/ Aaron Schepler*

17