**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| COKER & ASSOCIATES OF SC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SUMMIT FREIGHT INTERNATIONAL, INC.; AMERICAN CARRIER TRANSPORT, LLC D/B/A WCE TRANS; ARL LOGISTICS, LLC; and WARNESS JENKINS,<br><br>Defendants. | CIVIL ACTION NO.: 4:25-cv-00324 |

**O R D E R**

Plaintiff Coker & Associates of SC, LLC, filed this action in the State Court of Chatham County, Georgia, against Defendants Summit Freight International, Inc. ("Summit"), American Carrier Transport, LLC d/b/a WCE Trans ("ACT"), ARL Logistics, LLC ("ARL"), and Warness Jenkins. (Doc. 1-1.) Defendants removed the case to this Court on the basis of federal question jurisdiction. (Doc. 1.) Before the Court is Plaintiff's Motion to Remand. (Doc. 8). For the reasons below, the Court **DENIES** Plaintiff's Motion to Remand. (Id.)

**BACKGROUND**

**I. Factual Background**

The following facts are alleged in Plaintiff's Complaint. (Doc. 1-1.) Plaintiff sources and resells pre-owned industrial equipment, such as textile machinery and parts, and provides related technical, decommissioning, liquidation, and appraisal services to the textile industry. (Id. at pp. 3–5.) On August 22, 2024, Plaintiff engaged Summit to arrange over-the-road transportation of Plaintiff's high-value industrial textile machine from Sugar Valley, Georgia, to the Port of

Savannah, Georgia. (Id.) Summit then selected ACT and ARL (together, the "Carrier Defendants") as the motor carriers to transport the machine in Georgia. (Id.) The next day, Summit tendered the machine in good order and condition to the Carrier Defendants in Sugar Valley. (Id. at pp. 5–6.) The Carrier Defendants accepted physical custody of the machine and issued a Straight Bill of Lading (Short Form), identifying Plaintiff as the shipper, Mohawk Plant in Sugar Valley as the origin, and Savannah Port as the consignee and destination, stating that the transportation would proceed under Uniform Straight Bill of Lading terms. (Id.; see also doc. 8-2.) The transportation "was to be performed over the public highways of Georgia using a tractor-trailer suitable for heavy industrial equipment." (Doc. 1-1, p. 6.) The Carrier Defendants provided the tractor-trailer for carriage and engaged Warness Jenkins as the commercial driver to operate it. (Id. at pp. 5–6.)

Plaintiff alleges that, while transporting the machine to the Port of Savannah, "Jenkins lost control of the tractor-trailer in a curve" and entered the opposite lane, overturning the unit and causing "catastrophic damage" to the machine. (Id. at p. 7.) The law enforcement officer who responded to the scene determined that Jenkins was at fault, issuing him a citation for failure to maintain lane and a warning for driving too fast for conditions. (Id.) Plaintiff alleges that the machine's fair market value at the time of tender exceeded $100,000, and the damage to the machine was determined to be a total loss. (Id.) Plaintiff "promptly notified [the Carrier Defendants] of the loss and submitted a cargo claim with supporting documentation through their insurer and claims agent, Travelers." (Id.) Since then, Plaintiff has repeatedly requested payment of the machine's value from the Carrier Defendants. (Id.) According to Plaintiff, the Carrier Defendants have responded with excuses for nonpayment and "settlement offers that are materially inadequate." (Id.)

Plaintiff alleges that, despite its "repeated requests and submission of supporting materials, no Defendant has paid the value of the destroyed machine or otherwise made [Plaintiff] whole." (Id. at p. 8.) As a result, Plaintiff claims that it has incurred actual damages in excess of $100,000—the value of the machine—as well as incidental and consequential damages, "including lost resale profits and business expectancy associated with the planned disposition of the machine" and "freight, handling, towing, storage, salvage, inspection, and related out-of-pocket costs." (Id. at pp. 5, 7–8.) Plaintiff's claimed damages also include "interest, cost of suit, and reasonable attorneys' fees and expenses associated with pursuing recovery for the loss," and "prejudgment and postjudgment [sic] interest as allowed by law." (Id.)

Plaintiff did not attach to its Complaint any documents supporting the alleged existence or breach of the contract governing the at-issue shipment. (See doc. 1-1.) However, Defendants attached to the Notice of Removal an allegedly related invoice and a pickup and delivery order indicating that the intended final destination of the machine's shipment was India rather than Savannah. (Docs. 1-2 & 1-3.) Plaintiff admits in its Motion to Remand that, about a month before it engaged Summit to arrange the motor-carrier delivery from Sugar Valley to the Port of Savannah, it also booked an international ocean shipment through ASF Logistics, Inc. ("ASF"). (Doc. 8-1, p. 12 (citing docs. 8-2, 1-1 & 1-3).) Attached to Plaintiff's Motion to Remand is a declaration and exhibits identifying (1) the ASF booking documentation for ocean shipment of the machine,[1] and (2) the Straight Bill of Lading (Short Form) for the motor-carrier delivery at issue. (Doc. 8-2.)

---

[1] The first page of the ASF booking confirmation indicates that Savannah, Georgia, is the place of receipt and port of loading; Mundra is the port of discharge; and India is the shipment's final destination. (Doc. 8-2, p. 5.) The second page, in contrast, indicates that Greenville, South Carolina, is the place of receipt; Charleston, South Carolina, is the port of loading; and Puerto Barrios, Guatemala, is the port of discharge. (Id. at p. 6.) Plaintiff does not explain the apparent discrepancy within its own exhibit and instead asserts that there is a dispute over "which competing shipment documents govern." (See doc. 14, p. 8.)

## II. Procedural History

Plaintiff filed this lawsuit in the State Court of Chatham County, Georgia, and Defendants removed the action to this Court on the basis of federal question jurisdiction.[2] (Doc. 1.) Plaintiff's Complaint alleges eight causes of action under Georgia law against the various Defendants. (Doc. 1-1.) Two counts are for breach of contract, three counts are for negligence, another count alleges breach of bailment duties against the Carrier Defendants, another is for failure to exercise extraordinary diligence as a common carrier against the Carrier Defendants, and, lastly, Plaintiff seeks to recover attorneys' fees from all Defendants. (See generally id.)

Plaintiff has filed a Motion to Remand the case to the state court. (Doc. 8.) The Carrier Defendants filed a Response in opposition to this Motion, (doc. 13), and Plaintiff subsequently filed a Reply, (doc. 14).[3]

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted). As such, a defendant may only remove an action from state court if the federal court would possess jurisdiction over the subject matter. See 28 U.S.C. § 1441(a). A federal district court has original jurisdiction over two types of civil actions: (1) those arising under federal law ("federal question jurisdiction"); and (2) those involving diversity of citizenship ("diversity jurisdiction"). See 28

---

[2] The Notice of Removal was filed by the Carrier Defendants. Summit and Jenkins have never appeared in the case, and there is no indication that they have been served.

[3] Prior to the at-issue Motion to Remand, the Carrier Defendants filed a Motion to Dismiss. (Doc. 5). Plaintiff subsequently filed an Unopposed Motion to Stay Briefing on the Motion to Dismiss pending Resolution of the Motion to Remand. (Doc. 9.) The Magistrate Judge granted the Motion to Stay pending the Court's disposition of this Motion. (Doc. 10.)

U.S.C. §§ 1331, 1332. Additionally, even if a court does not have original jurisdiction over a claim, it may still hear it by invoking "supplemental jurisdiction" if the non-qualifying claim is "so related to claims in the action [that are] within [the] original jurisdiction [of the court] that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see also Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1563 (11th Cir. 1994).

On a motion to remand, the removing party bears the burden of establishing that the federal court has either original or supplemental jurisdiction over each of the claims in the removed complaint. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001); see also, e.g., Regenicin, Inc. v. Lonza Walkersville, Inc., 997 F. Supp. 2d 1304, 1310 (N.D. Ga. 2014) ("The removing party must prove jurisdiction by showing that each claim invokes either original or supplemental jurisdiction."). Removal jurisdiction is strictly construed with all doubts resolved in favor of remand. Mann v. Unum Life Ins. Co. of Am., 505 F. App'x 854, 856 (11th Cir. 2013). If, when ruling on a motion to remand, a district court finds that there is federal jurisdiction over every claim in a removed complaint—whether through federal question, diversity of citizenship, supplemental jurisdiction, or on some other basis—then the court may properly hear the entire complaint and deny the remand. 28 U.S.C. § 1441.

**DISCUSSION**

The "well-pleaded complaint rule" typically empowers plaintiffs to avoid federal jurisdiction by relying exclusively on state law on the face of their complaint. See Dunlap v. G&L Holding Grp., Inc., 381 F.3d 1285, 1290 (11th Cir. 2004). "There does exist, however, an 'independent corollary' to the well-pleaded complaint rule, known as the 'complete pre-emption' doctrine." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987) (citing Franchise Tax Bd. of Cal.

v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 22 (1983)). The complete pre-emption doctrine transforms certain actions that purport to raise only state-law causes into federal claims when the action is "in reality, 'purely a creature of federal law.'" Geddes v. Am. Airlines, Inc., 321 F.3d 1349, 1353 (11th Cir. 2003) (quoting id.). If a supposed state claim is completely preempted by federal law, then federal question jurisdiction exists and the claim is treated as one arising under federal law. Id.; Schleider v. GVDB Operations, LLC, 121 F.4th 149, 160 (11th Cir. 2024) (describing complete preemption as "a narrowly drawn jurisdictional rule for assessing federal removal jurisdiction when a complaint purports to raise only state law claims" (internal quotations omitted)). Importantly, this doctrine differs from ordinary preemption, which "is ordinarily a federal defense to the plaintiff's suit that does not authorize removal to federal court." Id. (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987)).

Defendants argue that the Court has federal question jurisdiction over Plaintiff's state and common-law claims because they arise from damages sustained during an international shipment, and are therefore completely preempted by the Carmack Amendment to the Interstate Transportation Act of 1887, 49 U.S.C. § 14706, *et seq*. (Doc. 1, pp. 3–7; doc. 13, pp. 5–12.) As outlined below, Defendants are correct, and complete preemption makes Plaintiff's claims removable based on federal question jurisdiction.

## I. The Carmack Amendment Completely Preempts Related State-Law Claims.

The United States Supreme Court has cautioned that federal law should completely preempt state law only when a federal statute has "extraordinary" preemptive force. Geddes, 321 F.3d at 1353 (citing Caterpillar Inc., 482 U.S. at 393). This occurs where "the federal statute at issue provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." Schleider, 121 F.4th at 160 (alteration adopted)

(quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003)). Accordingly, to determine whether the Carmack Amendment completely preempts state law, "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." Beneficial, 539 U.S. at 9 n.5.

The Carmack Amendment provides that a shipper may recover against a motor carrier for the actual losses resulting from damage to property during an international or interstate shipment. 49 U.S.C. §§ 14706(a)(1), 13501(1); see also 28 U.S.C. §§ 1337(a), 1445(b) (giving district courts original jurisdiction and permitting removal if the amount in controversy exceeds $10,000, exclusive of interest and costs). It was enacted to "achieve uniformity in rules governing interstate shipments, including the rules governing injury or loss to property shipped." (Doc. 13, pp. 5–6 (quoting UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc., 750 F.3d 1282, 1285 (11th Cir. 2014)).) Defendants aver that "the Supreme Court defined Carmack Amendment preemption in the broadest terms" when it "addressed the amendment's dual goals of uniformity and preemptive scope" in Adams Express Co. v. Croninger, 226 U.S. 491, 505–06 (1913). (Doc. 13, p. 6.) As a result, Defendants argue that the Carmack Amendment completely preempts all state-law claims seeking to hold a carrier liable for the loss of or damage to property sustained during its international or interstate shipment. (Id. at pp. 5–6; doc. 1, pp. 3–4.)

Neither the Supreme Court nor the Eleventh Circuit Court of Appeals have addressed whether the Carmack Amendment completely preempts state law. See Sanchez v. UPS Inc., No. 19-23704-CIV, 2019 WL 13255945, at *3 (S.D. Fla. Nov. 7, 2019). However, the Fifth Circuit Court of Appeals and Ninth Circuit Court of Appeals have grappled with this issue and found that it does. Hoskins v. Bekins Van Lines, 343 F.3d 769, 778 (5th Cir. 2003) ("We are persuaded by the preceding decisions and analysis offered by the Supreme Court, and this Court, that Congress

intended for the Carmack Amendment to provide *the exclusive cause of action for loss or damages to goods arising from the interstate transportation of those goods by a common carrier*. Accordingly, we hold that the complete pre-emption doctrine applies."); Hall v. N. Am. Van Lines, Inc., 476 F.3d 683, 687–88 (9th Cir. 2007) ("the Carmack Amendment completely preempts a contract claim alleging loss or damage to property" because it is "well settled that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property").

Moreover, as Defendants state in their Response, district courts in the Eleventh Circuit (including those in Georgia) have adopted the reasoning of the Fifth and Ninth Circuits and found that the Carmack Amendment completely preempts related state-law claims. See, e.g., Andrews v. Atlas Van Lines, Inc., 504 F. Supp. 2d 1329, 1332 (N.D. Ga. 2007) (finding, in agreement with the Fifth and Ninth Circuits, "that plaintiffs' claims are completely preempted by the Carmack Amendment and, therefore, that they necessarily arise under federal law"); Ozaroski v. D.O.L. Moving & Storage, Inc., No. 2:19-cv-201, 2020 WL 13568724, at *4 (N.D. Ga. Apr. 16, 2020) ("[T]he Carmack Amendment completely preempts Plaintiff's negligence claim and supplies federal subject matter jurisdiction."); D'Angola v. GoBucks, Inc., No. 07-60864-CIV, 2007 WL 9709730, at *5 (S.D. Fla. Aug. 8, 2007) (relying on "the Supreme Court's reasoning in Beneficial and the unusually powerful preemptive effect of the Carmack Amendment" to find that "the Carmack Amendment completely preempts all state causes of action against a common carrier for damage to goods in interstate transportation"); see also U.S. Aviation Underwriters, Inc. v. Yellow Freight Sys., Inc., 296 F. Supp. 2d 1322, 1338–39 (S.D. Ala. 2003); Morris v. Mayflower Transit, LLC, 18 F. Supp. 3d 1342, 1344–45 (M.D. Ala. 2014); Grier v. Griffin Moving & Storage, Inc., 452 F. Supp. 3d 1325, 1330 (S.D. Fla. 2017); Hubbard v. All States Relocation Servs., Inc., 114

F. Supp. 2d 1374, 1378 (S.D. Ga. 2000) (exercising federal question jurisdiction based on finding that the Carmack Amendment preempted plaintiff's state-law claims).

Still, Plaintiff argues that the Carmack Amendment does not completely preempt its claims because the Supreme Court has not applied complete preemption under the Carmack Amendment and Carmack's statutory scheme "cuts against any claim of complete-preemption removal jurisdiction." (Doc. 8-1, pp. 6–7.) Specifically, Plaintiff highlights that the Carmack Amendment contemplates a role for both state and federal authority, see 49 U.S.C. § 14706(d)(3), and Congress restricted original federal jurisdiction in this area by imposing a $10,000 amount-in-controversy threshold, see 28 U.S.C. § 1337(a). (Doc. 8-1, p. 7.) However, this argument is not compelling given the well-reasoned authority showing that Congress nevertheless created (and intended to create) an exclusive federal cause of action to displace all related claims. See, e.g., Hoskins, 343 F.3d at 778 n.7; see also Bear MGC Cutlery Co., Inc. v. Estes Exp. Lines, Inc., 132 F. Supp. 2d 937, 947 (N.D. Ala. 2001) ("Concurrent jurisdiction, however, does not, in and of itself, prevent removal of federal claims which may be maintained in either state or federal courts, but which, nevertheless, are removable.").

As Defendants point out, (doc. 13, pp. 5 n.2, 9), the Supreme Court's decision in Beneficial "represents a shift in the legal landscape surrounding the complete preemption doctrine." Andrews, 504 F. Supp. 2d at 1332. The Court's clarification—that the material inquiry is whether Congress intended the federal cause of action to be exclusive, not whether Congress intended it to be removable—is significant because of the Carmack Amendment's comprehensive preemptive scope. See Smith v. UPS, 296 F.3d 1244, 1246 (11th Cir. 2002) ("The Carmack Amendment creates a uniform rule for carrier liability when goods are shipped in interstate commerce. To accomplish the goal of uniformity, the Carmack Amendment preempts state law claims arising

from failures in the transportation and delivery of goods." (internal citations omitted)); Adams Express Co., 266 U.S. at 505–06 ("Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it."). The significance of Beneficial is bolstered by the evident difference it has made in the complete preemption analysis.[4] See U.S. Aviation Underwriters, Inc., 296 F. Supp. 2d at 1338 ("Historically, federal courts have been badly splintered as to whether the Carmack Amendment is subject to complete preemption . . . . Fortunately, the Supreme Court broke the logjam earlier this year in [Beneficial, which] profoundly impacts the reasoning of many decisions rejecting complete preemption in the Carmack Amendment setting." (internal citations omitted)); Andrews, 504 F. Supp. 2d at 1332 ("Beneficial represents a shift in the legal landscape surrounding the complete preemption doctrine. Therefore, despite the Eleventh Circuit's pre-Beneficial hesitancy towards extending the doctrine, this court does not believe that the law in this circuit requires it to remand this case for lack of jurisdiction.").

The Court agrees with the sound approach of the cases discussed above, which properly recognizes Congress's intent to make Carmack an exclusive federal cause of action.[5] Therefore,

[4] Plaintiff directs the Court to pre-Beneficial cases that, for the same reason, are unpersuasive. (Doc. 8-1, p. 8.) Those cases focused on whether Congress intended Carmack claims to be removable, not exclusive. See, e.g., Lamm v. Bekins Van Lines Co., 139 F. Supp. 2d 1300, 1304–05 (M.D. Ala. 2001) ("[T]he ultimate intent inquiry for [complete preemption] is . . . the forum-selection question of whether Congress intended to establish federal-question removal jurisdiction . . . ."); Circle Redmont, Inc. v. Mercer Transp. Co., 78 F. Supp. 2d 1316, 1317 (M.D. Fla. 1999) ("[T]he Carmack Amendment's language and legislative history do not manifest a congressional intent to convert state law claims into Carmack claims for purposes of removal jurisdiction.").

[5] The Court recognizes that complete preemption is rare—the Supreme Court has identified only a few statutes that completely preempt related state-law claims. See Dunlap, 381 F.3d at 1291 (providing that the Supreme Court has found complete preemption under "(1) § 301 of the Labor Management Relations Act; (2) § 1132 of the Employee Retirement Income Security Act of 1974; and (3) §§ 85 and 86 of the National Bank Act" (internal citations omitted)). (See also doc. 8-1, pp. 6–7.) That said, after reviewing the statute

the Carmack Amendment completely preempts all state-law claims for loss of or damage to goods arising from international transportation of those goods by a common carrier.

## II. The Carmack Amendment Applies to the Shipment at Issue.

The Court must also resolve whether the alleged intrastate shipment of the machine here is covered by the Carmack Amendment. The Carmack Amendment applies when the Interstate Commerce Commission ("ICC") has jurisdiction over the shipment at issue, which includes shipments "between a place in the United States and a place in a foreign country to the extent the transportation is in the United States." Swift Textiles, Inc. v. Watkins Motor Lines, Inc., 799 F.2d 697, 699 (11th Cir. 1986) (alterations adopted) (quoting 49 U.S.C. § 10521(a)(1)(E)). Defendants assert that the shipment from Sugar Valley, Georgia, to the Port of Savannah, Georgia, was one part of an international shipment to India. (Doc. 1, pp. 5–6; doc. 13, pp. 12–13.) Plaintiff argues, however, that the contract of carriage concerns a mere intrastate shipment that may not be redefined by "downstream logistics and separate arrangements." (Doc. 8-1, pp. 11–13.)

In Swift Textiles, Inc., the Eleventh Circuit stated that "[t]he nature of a shipment is not determined by a mechanical inspection of the bill of lading," but is instead determined by "the essential character of the commerce, reflected by the intention formed prior to shipment, pursuant to which property is carried to a selected destination by a continuous or unified movement." 799 F.2d at 699 (internal quotations and citations omitted).

> It is well-settled that, in determining whether a particular movement of freight is interstate or intrastate or foreign commerce, the intention existing at the time the movement starts governs and fixes the character of the shipment. Temporary stoppage within the state, made necessary in furtherance of the interstate carriage, does not change its character.

and relevant cases, it is apparent that the Carmack Amendment is intended to provide an exclusive federal cause of action.

Id. (alterations adopted) (internal citation omitted). The facts of that case are also instructive here. In Swift Textiles, Inc., the plaintiff contracted to buy a textile machine from a Swiss corporation, and the machine was shipped from Switzerland to Savannah, Georgia. Id. at 698. Then, the plaintiff engaged the defendant motor carrier to transport the machine from Savannah to LaGrange, Georgia, under a short form bill of lading. Id. While in transit to LaGrange, however, the machine was damaged, and the plaintiff filed suit as a result. Id. Although the precise shipment at issue was intrastate, the Court of Appeals found that it was still covered by the Carmack Amendment because "the domestic leg of the shipment was intended to be part of a larger shipment originating in a foreign country," thus falling within the ICC's jurisdiction. Id. at 701. Notably, the Eleventh Circuit instructed that "[i]t is irrelevant that the foreign and domestic legs of the voyage are effected by different shippers or carriers, that the intended consignee or its agent takes temporary custody of the goods at the port of discharge, or that the domestic leg does not cross state lines." Id. at 701. As Plaintiff recognizes, the Court's "inquiry looks at the 'totality of the circumstances'" and "not a litigant's post hoc characterization." (Doc. 8-1, p. 12 (citing Swift Textiles, Inc., 799 F.2d at 699–700).)

Here, the totality of the circumstances supports a determination that the shipment's final destination was intended to be a foreign country, not Savannah.[6] Although Plaintiff only engaged Defendants for the domestic leg of the shipment, the proper inquiry is whether that shipment was

---

[6] The Court need not decide whether to incorporate by reference the documents that Defendants attached to the Notice of Removal to reach its conclusion. (Docs. 1-2 & 1-3; see also doc. 1, pp. 5–6; doc. 8-1, pp. 9–11.) Because complete preemption is an exception to the well-pleaded complaint rule, the Court "must independently analyze whether preemption applies." Sanchez, 2019 WL 13255945, at *3. Further, "in ruling on a motion to remand, the Court may consider 'post-removal evidence in assessing removal jurisdiction'" and parties "may submit a wide range of evidence in order to satisfy the jurisdictional requirements of removal." Id. (first quoting Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 949 (11th Cir. 2000); then quoting Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 755 (11th Cir. 2010)) (internal quotations omitted).

intended to be part of a larger shipment to a foreign country. Plaintiff admits that it booked the international ocean shipment prior to booking the over-the-road intrastate shipment. (Doc. 8-1, p. 12; doc. 14, p. 9 n.1.) In doing so, Plaintiff cites the pickup and delivery order indicating Mundra, India, as the port of discharge, (doc. 8-1, p. 12 (citing doc. 1-3)), and Plaintiff's own submissions reflect that the shipment's intended final destination was a foreign country, (see doc. 8-2, pp. 1–6).[7] Therefore, the Carmack Amendment applies to the Sugar Valley-to-Savannah shipment as part of the larger intended shipment from a place in the United States to a place in a foreign country.

Plaintiff's claims are completely preempted, and thus removable, because Plaintiff seeks to recover well over $10,000 from Defendants for the loss of or damage to property sustained during its shipment. (Doc. 1-1.) Plaintiff has not alleged any conduct that is separate and distinct from Defendants' failure to deliver the machine. See Smith, 296 F.3d at 1249 ("[S]eparate and distinct conduct rather than injury must exist for a claim to fall outside the preemptive scope of the Carmack Amendment."); see also Andrews, 504 F. Supp. 2d at 1331 (finding that "plaintiffs' state law claim for attorneys' fees and costs is preempted because it alleges liability relating to defendants' failure to adequately resolve plaintiffs' claim for damages that arose from the transport of their possessions" (internal citation omitted)).

**CONCLUSION**

Based on the above, the Court **DENIES** Plaintiff's Motion to Remand. (Doc. 8.) Having disposed of the Motion to Remand, the Court **DIRECTS** Plaintiff to respond to the Carrier

---

[7] As discussed above, there is a discrepancy in the booking documentation submitted to the Court. (Doc. 8-2.) The documentation details a shipment from Savannah to India as well as a shipment from South Carolina to Guatemala. Id. Given that both destinations are foreign countries, it is not necessary to resolve this factual discrepancy. See D'Angola, 2007 WL 9709730, at *2 n.3.

Defendants' Motion to Dismiss, (doc. 5), within **fourteen (14) days** of the entry of this Order. (See doc. 10.)

**SO ORDERED**, this 28th day of September, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA